### TEMPLETON et ux. v. OLIVER H. ROSS PIANO CO. (No. 12104.)

Court of Civil Appeals of Texas. Fort Worth. March 23, 1929.

Rehearing Denied May 4, 1929.

Templeton & Templeton and Cecil A. Morgan, all of Fort Worth, for appellants.

E. L. Gilbert, of Fort Worth, for appellee.

BUCK, J. This suit was instituted by the Oliver H. Ross Piano Company, a corporation, in the county court at law No. 2 of Tarrant county, against P. V. Templeton and wife, Mrs. Irene Templeton, to recover the sum of $300 with $52.30 accrued interest thereon, plus 10 per cent. attorney's fees, and costs of suit, and also for a foreclosure of a chattel mortgage given on a certain piano purchased by the Templetons from the piano company. The defendants pleaded in defense:

(1) Fraud and misrepresentation on the part of the plaintiff's agent who sold them the piano, and who induced them to sign the contract of purchase thereof, in the several particulars specified in its answer, which was duly verified.

(2) They also pleaded that the piano delivered to them was defective in certain material respects; that the plaintiff had failed and refused to remedy such defects, as it had contracted to do, and had failed to make good its guarantee of quality and fitness; and

(3) A failure of consideration.

Therefore, they tendered back to the plaintiff the piano in question and sought a cancellation and rescission of the contract, and a recovery of the amount that had been paid thereon, to wit, $295. They also pleaded the same facts by way of cross-action against plaintiff, and in addition to a prayer for cancellation and rescission of the contract, they pleaded, in the alternative, for a recovery of the damages which they alleged they had sustained by reason of the fraud alleged to have been perpetrated on them by the plaintiff and its agents, which damages they averred equaled the balance claimed of them

by the plaintiff under the contract upon which suit was filed.

In reply to this cross-action, the plaintiff specially denied the allegations thereof, and also pleaded ratification on the part of the defendants of the alleged fraudulent contract, and that they were estopped to deny its validity. Plaintiff further pleaded that by reason of the failure of the defendants to repudiate the contract within a reasonable time, the defendants had been guilty of laches and had acquiesced in and waived the alleged fraud of appellee. By their silence they had indicated there was no agreement other than that embodied in the contract sued upon, and as set forth in the pleadings of the plaintiff.

The cause was submitted to a jury upon the following special issues, hereinafter given with the answers thereto:

"1. Did the plaintiff's agent, E. I. Conkling, in negotiating the sale of the piano in question to the defendants as an inducement to such sale, state and represent to the defendants or either of them in substance the following:

"(a) That it was a $750 piano; that his company had theretofore handled two grades of De Kalb grand pianos, one to sell for and which was then and there of the value of $750, and the other a cheaper piano which regularly sold for $595? Answer yes or no.

"Answer: Yes.

"(b) That he and his company had theretofore sold a number of said $750 pianos to divers persons in Fort Worth, naming them, for $750 each? Answer yes or no.

"Answer: Yes.

"(c) That his company was not going to handle the higher grade piano any longer, and that it had been decided to reduce the price on the two yet remaining on hand, to $595? Answer yes or no.

"Answer: Yes.

"(d) That said piano was in truth and in fact well worth the sum of $750, and more; that notice had already been received from the factory which manufactured said pianos; that a $200 advance in the price of both grades of DeKalb pianos would go into effect at a very early date, notice of which advance would be given his company, and which was expected momentarily; and that said piano so sold to defendant would actually advance in price and value, and then be, not later than February, 1925, of the price and value of $950; and that after such notice was received, said piano could not be sold or purchased for less than $950, and which price his company would be compelled to demand and receive therefor? Answer yes or no.

"Answer: Yes.

"(e) That unless defendant Irene Templeton made a deposit on said piano, so that it would be tagged "sold" and held for her, the said advance in price would go into effect immediately, and the chance of a lifetime would be lost to her? Answer yes or no.

"Answer: Yes.

"(f) That said piano was of the very best grade and quality, and would last a lifetime; that it would be delivered in first class condition, and that his company would stand behind it and remedy any and all defects in same, should there be any? Answer yes or no.

"Answer: Yes.

"2. If you have answered the above questions in the negative, then you need not answer this question, but if you have answered one or more of the above in the affirmative then state: Were such representations made by the agent as the statement of an existing fact? Answer yes or no.

"Answer: Yes.

"3. If you have answered the above questions, Yes, then you need not answer the following question, but if you have answered same, No, then answer the following question: Were the statements, as you have found them to be made, statements of an opinion only on the part of the agent, E. I. Conkling? Answer yes or no.

"Answer: ———.

"4. If you have answered question No. 1 and the subdivisions thereof all in the negative then you need not answer the following question, but if you have answered one or more of such questions in the affirmative, then answer the following questions, viz.:

"(a) Were the statements which you find were so made to the defendants, one or both of them as the case may be, true or false? Answer as you find the facts to be.

"Answer: False.

"(b) If you have answered the next preceding question that the statements were true, you need not answer this question, but if you have answered that they were false then answer the following question: Did the defendants, one or both of them, as the case may be, believe the statements so made, to be true? Answer yes or no.

"Answer: Yes.

"(c) Did the defendants rely on the truth of the statements so made by said agent, if you find same were so made, and that they were untrue, and were they thereby induced to purchase said piano and to execute the contract and mortgage herein sued upon? Answer yes or no.

"Answer: Yes.

"5. Did the plaintiff's agent, E. I. Conkling, in negotiating the sale of the piano in question to the defendants, as an inducement of such sale, state and represent to them, or to either of them, in substance that (a) although the note provided for interest from date, that same would not be charged? Answer yes or no.

"Answer: Yes.

"(b) That the last payment of $150.00 provided for in said note, when due, upon the request of the defendants would be extended and split up over the period of the following year so that the defendants could pay same in equal monthly amounts? Answer yes or no.

"Answer: *Yes.*

"6. If you have answered No to the above question, 5-b, you need not answer this question, but if you have answered Yes, then state: Did the agent represent that said note would be extended, provided payments were regularly made and kept up by the defendants? Answer yes or no.

"Answer: *No.*

"7. If you have answered subdivisions (a) and (b) of question No. 5 in the negative you need not answer the following questions, but if you have answered same in the affirmative you will then answer:

"(a) Were the statements so made true or false? Answer as you find the facts to be.

"Answer: *False.*

"(b) If you have answered that the statements were true, then you need not answer the following question, but if you have answered that said statements were false, then you will answer the following question: Did the defendant P. V. Templeton at the time said statements were made, believe and rely thereon and was he thereby induced to execute the contract and mortgage sued upon? Answer yes or no.

"Answer: *Yes.*

"8. Was the piano in question materially defective and of an inferior quality at the time it was sold to the defendants? Answer yes or no.

"Answer: *Yes.*

"9. When did the defendants, or either of them, offer to surrender the piano back to the plaintiff and ask for a rescision and cancellation of the contract in question? Answer by giving the date.

"Answer: *About Oct. 1927.*

"10. Did the piano in question have a rental value at the time of sale? Answer yes or no.

"Answer: *Yes.*

"11. If you answer No to No. 10, you need not answer further, but if you answer Yes, then answer, what amount, if any, do you find is the reasonable rental value of said piano from the date of its purchase to the date which you have answered in issue No. 9? Answer in dollars and cents.

"Answer: *$125.00*

"12. After the defendants discovered the defects in said piano, if any there were, and the misrepresentations made by the agent of the plaintiff, if you have found them so to have been made, did the defendants within a reasonable length of time thereafter tender the piano back to the plaintiff and seek cancellation and rescission of the transaction? Answer yes or no.

"Answer: *No.*"

Upon the answers of the jury, the court rendered judgment for plaintiff upon its claim and a judgment against the defendants upon their cross-action.

The undisputed evidence shows that on October 23, 1926, the defendants, in a letter to the plaintiff, advised the plaintiff that they would make no further payment on the piano, and at that time offered to rescind said transaction and deliver the piano back to plaintiff upon the repayment to the defendants of the several amounts which they had paid on the piano and the cancellation of the notes given therefor. The appellee admits that the date of this offer to rescind was in 1926, instead of 1927, as found by the jury.

### Opinion.

No complaint is made by appellee of lack of evidence to support the findings of the jury as to the first eight issues submitted, and we think the answers are supported by the evidence. In the absence of objections to the sufficiency of the evidence to sustain such findings, it will not be necessary for us to consider such evidence.

Special issues Nos. 9 and 11, specially requested by the defendants and refused by the trial court, are as follows:

"9. What was the reasonable value of the piano in question at the time it was sold and delivered to the defendants?"

"11. What is the reasonable value of said piano in its present condition?"

The defendants in the court below alleged that the agent of the Ross & Hyer Piano Company, later called the Oliver H. Ross Piano Company, represented to them, and to each of them, that the piano in question had been selling for $750 and was worth that much, and that they had only two of the higher price pianos on hand; the other, the cheaper piano, was sold for $595; that his company was not going to handle the higher grade of pianos any longer, and it had been decided to reduce the price on the two pianos yet remaining of the higher grade to $595, and it would be necessary for Mrs. Templeton to pay $100 cash on the purchase price in order to get the advantage of the higher grade of piano at the price of the lower grade; that notice had already been received from the factory which manufactured the pianos that a $200 advance in the price of each grade of the De Kalb pianos would go into effect at a very early date, and that the higher price pianos would be retailed thereafter at $950; that said piano was of the very best grade and quality and would last a lifetime; that it would be delivered in first-class condition, and that his company would stand behind it and remedy all de-

fects should there be any; that these representations were made by the agent as a statement of existing facts and not as an expression of an opinion. In answer to the various questions submitted to the jury, the jury found that all of these representations had been made, together with those not necessary here to mention, and that they were false, and that the defendants believed them to be true at the time the purchase of the piano was made.

In one count of their answer, the defendants pleaded:

"If for any reason such relief by cancellation cannot be had, then defendants aver that they have been damaged by the fraud and deceit so perpetrated on them by the plaintiff and its said agent, in the amount and to the extent of the notes herein sued on, wherefore, they sue and, pray that said notes be cancelled and held for naught, and in the alternative, they pray for judgment for their said damages, and for all costs of suit, and for such other and further relief as they may show themselves entitled to, and so will they ever pray."

■■ We think under the pleadings of the defendants, and in view of the testimony, which the jury evidently believed, that they were entitled to have issues Nos. 9 and 11 submitted to the jury, and that the effect of a finding by the jury favorable to the defendants upon these two issues was not in any way limited or circumscribed by the findings of the jury in answer to issue No. 12, in effect that the defendants did not, within a reasonable time after they discovered the defects in the piano, tender the piano back to the plaintiff and ask a cancellation and rescission of the transaction. In Black on Rescission and Cancellation, p. 10, § 6, it is said:

"But besides the technical rescission of a contract, releasing each party from every obligation under it, as if it had never been made, there is a mode of abandoning a contract, as a live and enforceable obligation, which still entitles the party declaring its abandonment to look to the contract to determine the compensation he may be entitled to under its terms for the breach which gave him the right of abandonment. Such an abandonment, following upon the renunciation of the other party and his refusal to perform, is not a rescission of the contract, but a mere acceptance of the situation which the wrongdoing of the other party has brought about."

■ The right of rescission and cancellation is an equitable right, and in those states having separate jurisdictions for equitable actions and legal actions, a suit for cancellation and rescission must be brought in a court of equity. But in this state, under our blended system, one may secure equitable relief or legal relief in the same court. A cross-bill is available to a defendant or respondent not only for the purpose of perfecting his rights,

as where he seeks the cancellation of the instrument or contract sued upon, but also for his protection, and, if the circumstances warrant it, the enforcement of such of his legal rights as may be germane to the complainant's bill or plaintiff's petition. See 4 R. C. L. p. 519, § 31, which says:

"Even though the matters set out in the cross bill are purely legal, the complainant, having brought the appellee in equity upon matters of exclusively equitable cognizance, cannot be heard to question the jurisdiction of the court over the matters set up by the defendant's cross bill. Equity having once acquired jurisdiction and having before it the proper parties and the subject matter to enable it to do complete justice between them, will not relegate the defendant to the necessity of relitigating his rights at law."

■ A defendant, having been sued under a contract, even though he has lost his right of cancellation and rescission, by failure to act within due time nevertheless can offset some of the claims urged by the plaintiff by showing that to give the full relief asked for would be unfair and inequitable.

■ We think the instant case involves this principle, and that the defendants had the right to have submitted to the jury issues which, if answered favorably to them, would entitle them to some relief. If the piano was sold the defendants below under a fraudulent representation, as found by the jury, and the defendants tendered in the court the piano, they would be liable only for the difference in value of the piano as represented and the value of the piano at the time it was purchased. We think that it was error in the court to refuse to submit the two issues herein above, for which error the judgment should be reversed.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

### On Appellee's Motion for Rehearing.

We do not think that the case of Johnson v. Ross & Heyer Co., No. 9289, by this court, not published,[1] has any application to the pleadings and facts proven in this case. Appellee quotes from the opinion on original hearing in that case as follows:

"Plaintiff in the second paragraph of his petition pleaded: 'That on April 30, 1917, it sold one Clarendon piano, oak No. 72820, one stool and one scarf for the consideration of $350.00, on which contemporaneous with said sale, the defendant paid $10.00.' If this allegation is sufficient, as against a general demurrer to show the value of the piano sold, upon which plaintiff sought a foreclosure by its suit, filed in the county court on September 10, 1917, then the assignment is without merit. We conclude that the term 'considera-

[1] Memorandum opinion.

tion' in the above sentence is a legal equivalent of the word 'price,' and means that the piano was sold for the price of $350.00. The word 'price' is not synonymous with value, strictly speaking, but where a merchant in the ordinary course of trade, sells to a purchaser, an article of merchandise for the alleged 'price of $350.00,' such expression in the absence of a special exception may be termed as synonymous with the expression 'value of $350.00.' "

In that case there was no statement of facts, and we found that neither appellant nor appellee had pleaded that Ross & Heyer Company was a merchandising company. But in the instant case the appellee alleged that the Oliver H. Ross Piano Company was a corporation, and sold to the defendants a De Kalb grand piano, and that the defendants executed their promissory notes and gave a chattel mortgage on said piano for the payment thereof. The defendants pleaded that the Ross & Heyer Piano Company, the predecessor of plaintiff, was engaged in the sale of pianos as retail dealers in the city of Fort Worth; that one E. I. Conkling was then a salesman and agent of said company, and as such he was engaged in soliciting persons to purchase pianos handled by said company and in negotiating sales thereof, etc.

We think that the pleadings of appellants and the testimony in the record amply support the conclusion that the Oliver H. Ross Piano Company was a merchant engaged in selling pianos at retail, and as such sold the piano in question. Quoting from Johnson v. Ross & Heyer Co., above noted: "Where a merchant in the ordinary course of trade sells to a purchaser, an article of merchandise for the alleged 'price of $350.00,' such expression in the absence of a special exception may be termed as synonymous with the expression 'value of $350.00.' "

E. I. Conkling testified that the regular price of the piano sold to the Templetons was $595 and that said piano had been selling at that price, he thought, ever since the company had been handling the same; that this was the stated retail price.

Mrs. Templeton testified that the keys to the piano stuck, and that one could not perform on the piano because of the sticking together of the keys; that the agent of the company when she bought the piano had promised to put and keep it in repair; that she was not able to use the piano in the condition it was while it was in her home.

P. V. Templeton testified that the piano was a nice ornament in the home, but there was no music in it.

Mrs. Raymond Jones testified that the piano was in a poor condition; that she had lived in the Templeton home some time last fall and had seen the piano in the room and found that the keys stuck every time one tried to play it and saw other people try to play on it; that the piano set in the Templeton home and was not opened up because nobody could play on it; that the piano never got wet or overheated while she was in the Templeton home; that the piano did not set where the sun could get to it, nor was it ever exposed to any unusual weather conditions while she was there.

Mrs. Templeton testified that the piano was practically in as good condition as when it was delivered to her.

We think there was ample pleading and evidence to make the difference in the value of the piano at the time it was sold and at the time of the trial an issue.

The motion for rehearing is overruled.