**TEMPLETON et al. v. SMALL, County Judge, et al.**

No. 12527.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 17, 1931.

J. A. Templeton and Cecil Morgan, both of Fort Worth, for relators.

Simpson, Collins & Moore, of Fort Worth, for respondents.

BUCK, J.

This suit is an appeal from the action of the county judge of the court of law No. 2, Tarrant county, in failing to render a judgment for defendants P. V. Templeton and wife. The facts in the case are recited in Templeton et ux. v. Oliver H. Ross Piano Company (Tex. Civ. App.) 17 S.W.(2d) 474. In the present suit, the court submitted the case upon special issues, which, together with the answers thereto, are as follows:

"Did plaintiff's agent, E. I. Conkling, in negotiating the sale of the piano in question to the defendants, as an inducement to such sale, state and represent to the defendants or either of them in substance as follows:

"(a) That it was a $750 piano; that his company had theretofore handled two grades of De Kalb grand pianos one to sell for, and which was then and there of the value of $750, and the other a cheaper piano which regularly sold for $595. To which the jury answered 'Yes.'

"(b) That he and his company had theretofore sold a number of said $750 pianos to divers persons in Fort Worth, naming them, for $750. Answer 'No.'

"(c) That his company was not going to handle the higher grade piano any longer, and that it had been decided to reduce the price on the two yet remaining on hand to $595. Answer: 'Yes.'

"(d) That said piano was in truth and in fact well worth the sum of $750 and more; that notice had already been received from the factory which manufactured said pianos that a $200 advance in the price of both grades of De Kalb pianos would go into effect at a very early date, notice of which advance would be given his company, and which was expected momentarily; and that said piano so sold to defendant would actually advance in price and value and then be, not later than February 1, 1925, of the price and value of $950; and that after such notice was received said piano could not be sold or purchased for less than $950, and which price his company

would be compelled to demand and receive therefor? Answer 'Yes.'

"(e) That unless defendant Irene Templeton made a deposit on said piano, so that it could be tagged 'sold' and held for her, the said advance in price would go into effect immediately and the chance of a lifetime would be lost to her? Answer 'Yes.'

"(f) That said piano was of the very best grade and quality and would last a lifetime; that it would be delivered in first-class condition, and that his company would stand behind it and remedy any and all defects in same should there be any? Answer 'Yes.'

"2. If you have answered the above questions in the negative, then you need not answer this question, but if you have answered one or more of the above in the affirmative, then state:

"Were such representations made by the agent as the statement of an existing fact? Answer 'No.'

"3. If you have answered the above question 'yes,' then you need not answer the following questions, but if you have answered same 'no,' then answer the following questions:

"Were the statements, as you have found them to be made, statements of an opinion only on the part of the agent E. I. Conklin? Answer 'Yes.'

"4. If you have answered question No. 1 and the subdivisions thereof all in the negative, then you need not answer the following questions, but if you have answered one or more of such questions in the affirmative, then answer the following questions, viz:

"(a) Were the statements which you find were so made to the defendants, one or both of them as the case may be, true or false? Answer 'False.'

"(b) If you have answered the next preceding question that the statements were true, you need not answer this question, but if you have answered that they were false, then answer the following question:

"Did the defendants, one or both of them, as the case may be, believe that the statements so made to them, if you find same were so made, to be true? Answer 'Yes.'

"(c) Did the defendants rely on the truth of the statements so made by said agent, if you find same were so made and that they were untrue, and were they thereby induced to purchase said piano and to execute the contract and mortgage herein sued upon? Answer 'Yes.'

"5. Did the plaintiff's agent, E. I. Conkling, in negotiating the sale of the piano in question to the defendants, as an inducement to such sale, state and represent to them, or to either of them, in substance, that:

"(a) Although the note provided for interest from date, that same would not be charged? Answer 'Yes.'

"(b) That the last payment of $150, provided for in said note, when due, upon the receipt of the defendants would be extended and split up over the period of the following year so that the defendants would pay same in equal monthly amounts? Answer 'Yes.'

"(6) If you have answered 'no' to the above question 5(b), you need not answer this question, but if you have answered 'yes' then state:

"Did the agent represent that said note would be extended, provided payments were regularly made and kept up by the defendants? Answer 'Yes.'

"(7) If you have answered subdivisions (a) and (b) of question No. 5, in the negative, you need not answer the following questions, but if you have answered same in the affirmative, you will then answer:

"(a) Were the statements so made true or false? Answer 'True.'

"(8) Was the piano in question materially defective and of an inferior quality at the time it was sold to the defendants? Answer 'No.'

"(9) When did the defendants, or either of them offer to surrender the piano back to the plaintiff and ask for a rescission and cancellation of the contract in question. Answer 'October 23, 1926.'

"(10) After the defendants discovered the defects in said piano, if any there were, did the defendants within a reasonable length of time thereafter tender the piano back to the plaintiff and seek a cancellation and rescission of the transaction? Answer 'No.'

"(11) After defendants discovered the misrepresentations, if any, by the agent of the plaintiff, did the defendants within a reasonable length of time thereafter tender the piano back to the plaintiff and seek a cancellation and rescission of the transaction? Answer 'No.'

"12. What do you find from the evidence was the reasonable market value of said piano at the time it was sold to the defendants? Answer '$595.00.'

"13. What do you find from the evidence is the reasonable market value of said piano at this time? Answer '$310.00.'"

In answer to defendants' specially requested issue No. 7, the jury answered that plaintiff's agent, E. I. Conkling, in procuring the consent of the defendant P. V. Templeton to the sale and purchase of said piano, and his signature to the note and mortgage herein sued on, represented to him or both of said defendants, and promised and agreed with him or them, that he (Conkling) would not deliver said note and mortgage to his company as a binding obligation on defendants unless and until said company agreed to and did strike from said note and mortgage the provision therein contained with reference to same bearing interest.

In answer to defendants' specially requested issue No. 8, the jury answered that the defendant P. V. Templeton believed and relied on such representations, and was thereby induced to sign said note and give same to the possession of said Conkling.

In answer to defendants' specially requested issue No. 9, the jury answered that the defendants, after they discovered the fraud and misrepresentation which had been practiced on them, waived such fraud or misrepresentations and elected to abide by the contract which they made.

In answer to plaintiff's special issue No. 1, the jury answered that the defendant P. V. Templeton, after he discovered that plaintiff was claiming interest under the provisions of the contract sued upon, repudiated said contract within a reasonable time.

The cause was tried in the court below on October 3, 1930. Both plaintiff and the defendant moved the court to render judgment on the findings of the jury, and on November 1, 1930, the last day of the term of court, the defendant's motion for judgment was in all things overruled and denied, because of the alleged conflict in the answers of the jury to the several issues made to them, and the court declared a mistrial and that no judgment be rendered on the verdict, to which ruling of the court the defendants then and there excepted and have applied to this court for a writ of mandamus to compel the judge to enter judgment in their favor.

## Opinion.

Article 1824, Rev. Civ. Statutes of 1925, with reference to the powers of Courts of Civil Appeals, provides: "Said courts, or any judge thereof, in vacation may issue the writ of mandamus to compel a judge of the district court to proceed to trial and judgment in a cause, returnable as the nature of the case may require."

Under this statute it has been held that a mandamus will not lie to compel a county judge to proceed to trial and judgment. Fannin County v. Hightower, 9 Tex. Civ. App. 293, 29 S. W. 187. But the 1929 Legislature (chapter 33) amended articles 1819, 1821, and 1824 (Vernon's Ann. Civ. St. arts. 1819, 1821, 1824), and added to article 1824, after "judge of the district court," the words "or county court." Therefore, it would seem that there is no statutory inhibition against issuing a writ of mandamus to a judge of the county court to proceed to trial and judgment in a cause on special issues, where such issues are answered by the jury in such a way as would require the judge to enter judgment for one of the parties.

It will be noted that in answer to question No. 2 the jury found that the representations made by the agent did not constitute a statement of an existing fact, but was merely an expression of his opinion. The jury further found in answer to question No. 7 that, if subdivisions (a) and (b) of question No. 5 were answered in the negative, they need not answer the following questions, but, if they were answered in the affirmative, then they were asked if the statements so made were true or false, and they answered that they were true. They further answered in answer to question No. 12 that $595 was the reasonable market value of the piano, which was the price charged for it by the plaintiff below and promised to be paid for it by the defendants. In answer to question No. 10, the jury answered that the defendants, after they discovered the defects in said piano, did not within a reasonable length of time tender said piano back to the plaintiff and ask a cancellation and rescission of the transaction. In answer to question No. 11, the jury answered that, after defendants discovered the misrepresentations, if any, by the agent of plaintiff, defendants did not within a reasonable time thereafter tender the piano back to the plaintiff and ask a cancellation and rescission of the transaction. In answer to defendants' specially requested issue No. 8, the jury answered that defendant P. V. Templeton believed and relied on such representations and was thereby induced to sign said note and give same into the possession of said Conkling. In answer to defendants' specially requested issue No. 9, the jury found that the defendants, after they discovered the fraud and misrepresentations which had been practiced on them, if the jury found that there was such fraud and misrepresentation, waived such fraud and misrepresentation and elected to abide by the contract which they had made.

In view of these answers, some of them evidently conflicting, we are of the opinion that the trial court did not err in failing to render judgment for defendants. We think it admissible to show by affidavit the action of the trial court in entering the judgment, nunc pro tunc, after the expiration of the term in which the case was tried, inasmuch, especially, as the affidavit shows that an order was in fact rendered verbally, and that both parties knew of the entering of said order during the term in which the case was tried.

Article 1822, Rev. Civ. Statutes, says: "Said courts shall have power, upon affidavit or otherwise as by the courts may be thought proper, to ascertain such matters of fact as may be necessary to the proper exercise of their jurisdiction."

The evidence shows that the cause was begun on September 30, 1930, and lasted through October 4, 1930; that, after the verdict was rendered, motions for judgment by both parties were made during the last week of the term, ending November 30, 1930. The court during that term set aside the verdict and declared a mistrial, as shown by the order quoted in this opinion, and by a nunc pro tunc order he declared a mistrial and granted a new trial in this cause.

■ In Wright v. Swayne, 104 Tex. 440, 140 S. W. 221, 222, Ann. Cas. 1914B, 288, by the Supreme Court, Judge Ramsey said: "It is a rule of universal application that this court would have no authority to issue the writ of mandamus to an inferior court, except in respect to the performance of a purely ministerial act. We are without power in a direct proceeding, such as this, to direct such court as to how it should proceed, or to control such court in respect to a matter involving the exercise of its judgment and discretion. We would be and are wholly without authority and power to grant the mandamus in this case, unless we should determine and hold that the action of the district court in undertaking to grant said motion for a new trial is absolutely void in law, and that the same is wholly of no effect. If we should so determine, it is not doubted or denied that petitioners would be entitled to the due execution of the judgment in their favor, and, if the court should willfully refuse to execute its own judgments according to their true intent and effect, we would have the authority, and it would be our duty, to direct it to proceed to execute the judgment and sentence of the law. Unless, however, the action of the court in undertaking to grant, and in granting, such third motion for new trial is wholly and absolutely void, then we are powerless to act, and this without reference to whether the ruling of the court in granting such motion was or was not justified under the law."

The rule that a writ of mandamus will not lie to an inferior court to compel the performance of an act involving judicial discretion is well settled and of universal application.

The application for writ of mandamus is denied.